# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA ex rel. MICHAEL LAFAUCI,<br><br>        Plaintiffs,<br><br>v.<br><br>ABBVIE INC. and QUINTILES TRANSNATIONAL HOLDINGS INC.,<br><br>        Defendants. | Case No. 15-7931-WJM/MF<br><br>Hon. William J. Martini, S.U.S.D.J.<br>Hon. Mark Falk, U.S.M.J.<br><br>**Motion Date:  November 5, 2018**<br><br>*Document electronically filed* |

## BRIEF IN SUPPORT OF DEFENDANT'S
## OPPOSITION TO MOTION TO TRANSFER

Dated:  October 22, 2018

Justin T. Quinn, Esq.
ROBINSON MILLER LLC
One Newark Center, 19th Floor
Newark, New Jersey 07102
Telephone: (973) 690-5400
Facsimile: (973) 466-2761

Andrew A. Kassof, P.C.*
Elizabeth S. Hess, P.C.*
Diana M. Watral*
Daniel I. Siegfried*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
* *pro hac vice pending*

*Attorneys for Defendant AbbVie Inc.*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................1

BACKGROUND .........................................................................................2

LEGAL STANDARD..................................................................................4

ARGUMENT ..............................................................................................5

I.     LaFauci's Attempt To Circumvent The FCA's First-To-File Bar Is Wasteful, Burdensome, And Contrary To The Interests Of Justice. ..............................6

II.    LaFauci Has Not Shown That Illinois Is The More Convenient Forum.......12

CONCLUSION ..........................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Fuller v. Insys Therapeutics, Inc.*,
   No. CA 17-07877-ES-SCM, 2018 WL 4275992 (D.N.J. Sept. 6, 2018) .........5, 14

*Great W. Mining & Mineral Co. v. ADR Options, Inc.*,
   882 F. Supp. 2d 749 (D.N.J. 2012), *aff'd*, 533 F. App'x 132 (3d Cir. 2013).........5

*Grynberg v. Koch Gateway Pipeline Co.*,
   390 F.3d 1276 (10th Cir. 2004) .............................................................................9

*In re Plavix Mktg., Sales Practices & Prod. Liab. Litig. (No. II)*,
   315 F. Supp. 3d 817 (D.N.J. 2018) ....................................................................11

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995) ...................................................................................4

*Kabushiki Kaisha v. Lotte Int'l Am. Corp.*,
   No. CV 15-5477, 2017 WL 4269457 (D.N.J. Sept. 26, 2017) ..............................4

*McMasters v. United States*,
   260 F.3d 814 (7th Cir. 2001) ..............................................................................12

*Rappoport v. Steven Spielberg, Inc.*,
   16 F. Supp. 2d 481 (D.N.J. 1998) ......................................................................14

*Roberts Bros. v. Kurtz Bros.*,
   231 F. Supp. 163 (D.N.J. 1964) ...........................................................................5

*Rosen v. Lieberman*,
   No. CV 16-7341 (JLL)(JAD), 2017 WL 3783705 (D.N.J. Aug. 31, 2017) ..........2

*Shutte v. Armco Steel Corp.*,
   431 F.2d 22 (3d Cir. 1970) ...............................................................................4, 5

*State Farm Fire & Cas. Co. v. U.S ex rel. Rigsby*,
   137 S. Ct. 436 (2016)............................................................................................7

*Tonkinson v. Byrd*,
   No. 17-CV-06162-NLH-AMD, 2018 WL 1919829 (D.N.J. Apr. 24, 2018) .........6

i

*United States ex rel. Carson v. Manor Care, Inc.*,
   851 F.3d 293 (4th Cir. 2017) ...............................................................................11

*United States ex rel. Chovanec v. Apria Healthcare Grp. Inc.*,
   606 F.3d 361 (7th Cir. 2010) ...............................................................................11

*United States ex rel. Dhillon v. Endo Pharm.*,
   617 F. App'x 208 (3d Cir. 2015) ...........................................................................8

*United States ex rel. Edgett v. Kimberly-Clark Corp.*,
   No. CA 15-CV-0434-B, 2017 WL 4222697 (N.D. Tex. Sept. 22, 2017) .............9

*United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*,
   318 F.3d 214 (D.C. Cir. 2003) ...............................................................................9

*United States ex rel. Kelly v. Novartis Pharm. Corp.*,
   827 F.3d 5 (1st Cir. 2016) ....................................................................................10

*United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*,
   149 F.3d 227 (3d Cir. 1998) ..............................................................................7, 9

*United States ex rel. Lujan v. Hughes Aircraft Co.*,
   243 F.3d 1181 (9th Cir. 2001) ...............................................................................8

*United States ex rel. Nowak v. Medtronic, Inc.*,
   806 F. Supp. 2d 310 (D. Mass. 2011) .................................................................10

*United States ex rel. Poteet v. Medtronic, Inc.*,
   552 F.3d 503 (6th Cir. 2009) .................................................................................9

*United States ex rel. Shea v. Cellco P'ship*,
   863 F.3d 923 (D.C. Cir. 2017) .............................................................................11

*United States ex rel. Simpson v. Bayer Corp.*,
   No. CA 05-3895 (JLL), 2012 WL 3600302 (D.N.J. Aug. 21, 2012) ..................10

*United States ex rel. Suarez v. AbbVie Inc.*,
   No. 15-cv-08928 (N.D. Ill.), Dkt. No. 1 ...................................................... passim

**Statutes**

28 U.S.C. § 1404(a) ...............................................................................................12

31 U.S.C. § 3730(b)(5)................................................................................. 1, 7, 10

**INTRODUCTION**

On October 8, 2015, relator Lazaro Suarez brought an action in the Northern District of Illinois alleging that AbbVie's product support services are actually concealed kickbacks to doctors that violate the Federal False Claims Act ("FCA") and various state law analogs. *See United States ex rel. Suarez v. AbbVie Inc.*, No. 15-cv-08928 (N.D. Ill.), Dkt. No. 1. Almost a month later, relator Michael LaFauci filed this suit, which—he candidly admits—raises the ***exact same*** legal claims. Indeed, LaFauci argues, "a close examination of the two complaints confirms" their "overlap" "is indisputably substantial." (Dkt. No. 15-1 ("Mot.") at 5.)

LaFauci now contends that the general, common-law "first-filed" venue doctrine requires transfer of his complaint to the Northern District of Illinois. (Mot. at 1.) His motion, however, ignores the specific, statutory "first-to-file" bar Congress wrote into the FCA: that once "a person brings an action under [the FCA], no person other than the Government may intervene ***or bring a related action*** based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5) (emphasis added). Far from a basis for transfer, the close relationship between LaFauci's complaint and the case already pending in the Northern District of Illinois is an absolute statutory, first-to-file ***bar*** on the claims and relief LaFauci now seeks. As AbbVie will detail in its forthcoming motion to dismiss, all of LaFauci's transfer arguments actually require dismissal under the FCA's first-to-file rule. LaFauci

1

therefore also fails to establish any basis for transfer under 28 U.S.C. § 1404(a)'s factors. Transferring this action to Illinois for consolidation would be futile, a "waste of time, energy and money," and contrary to both the FCA and § 1404. *Rosen v. Lieberman*, No. CV 16-7341 (JLL)(JAD), 2017 WL 3783705, at *2 (D.N.J. Aug. 31, 2017) (describing the purposes of § 1404(a) and denying motion to transfer) (internal quotations omitted). The Court should deny LaFauci's motion.

## BACKGROUND

Almost one month *before* LaFauci commenced this action, Lazaro Suarez filed a complaint in the Northern District of Illinois against AbbVie and Abbott Laboratories. The government declined to intervene in either case, and both remain pending actions.

LaFauci's later-in-time complaint raises the same legal claims as Suarez's earlier one. Both allege that AbbVie conspired with Quintiles to provide kickbacks to healthcare providers to induce prescriptions of Humira—primarily **outside of Illinois**—in violation of the False Claims Act and the Anti-Kickback Statute. *Suarez* Am. Compl. (Dkt. No. 20) ¶¶ 140-54; *LaFauci* Am. Compl. (Dkt. No. 4) ¶¶ 176-89. The following essential factual allegations are almost identical:

- AbbVie enlisted the assistance of Quintiles, an alleged co-conspirator in both actions, to develop and implement its Nurse Ambassador Program. *Suarez* Am. Compl. ¶¶ 14, 154; *see LaFauci* Am. Compl. ¶¶ 9, 75-76, 82.

2

- The co-conspirators "turned Ambassadors, who are trained nurses, into covert sales representatives" to promote Humira. *Suarez* Am. Compl. ¶ 4; *see LaFauci* Am. Compl. ¶¶ 10-11, 14, 74, 84.

- Ambassadors provide "kickbacks" to healthcare providers by "perform[ing] general and time-consuming tasks that otherwise must be performed by doctors and their staff." *Suarez* Am. Compl. ¶ 5; *see LaFauci* Am. Compl. ¶¶ 12, 14, 82, 88.

- AbbVie compensated doctors through speaker fees and free dinners to promote Humira. *Suarez* Am. Compl. ¶¶ 78-82; *see LaFauci* Am. Compl. ¶¶ 68, 154-69.

- Ambassadors also provide kickbacks to patients to induce demand for AbbVie's drugs. *Suarez* Am. Compl. ¶¶ 7, 103-11; *see LaFauci* Am. Compl. ¶ 9.

- Kickbacks drove Humira's "growth in sales." *Suarez* Am. Compl. ¶ 10; *see LaFauci* Am. Compl. ¶ 17.

AbbVie denies these allegations. But, even accepting them as true, they fail to state a claim under the FCA for the reasons explained in AbbVie's forthcoming motion to dismiss.

Notably, LaFauci embraces the strong similarities between the two complaints. LaFauci admits Suarez filed his complaint first. (Mot. at 5.) He further admits that "both complaints allege AbbVie is liable to the same real-party-in-interest plaintiffs (*i.e.* the United States and the States)" for essentially the same alleged conduct: that "AbbVie (i) engaged in the same illegal conduct to promote Humira and (ii) submitted false or fraudulent claims to government-funded health insurance programs in violation of the FCA." (*Id.*)

## LEGAL STANDARD

A motion to "transfer is not to be liberally granted." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (vacating transfer order) (internal quotations omitted). A court may only transfer a case if the transferee court can exercise jurisdiction over all defendants, *id.* at 24, and doing so would further "the convenience of parties and witnesses" and advance "the interest of justice," 28 U.S.C. § 1404(a).

When evaluating whether transfer is appropriate, "courts must engage in an individualized, case-by-case consideration of convenience and fairness." *Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, No. CV 15-5477, 2017 WL 4269457, at *2 (D.N.J. Sept. 26, 2017) (affirming denial of motion to transfer) (internal quotations omitted). Courts consider the "private interests" of the litigants in the case, including, among other things, the preferences of the plaintiff and defendant, where "the claim arose," and "the convenience of the parties as indicated by their relative physical and financial conditions." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The court must also balance the "public interests" in the administration of justice implicated by transfer, which includes "practical considerations that could make the trial easy, expeditious, or inexpensive." *Id.* The party seeking transfer bears the "heavy" burden of "proving that the alternative venue is not only adequate, but also *more* convenient than the current one." *Fuller v. Insys Therapeutics, Inc.*,

4

No. CA 17-07877 (ES)(SCM), 2018 WL 4275992, at *2-3 (D.N.J. Sept. 6, 2018) (emphasis added) (denying motion to transfer); *see also Shutte*, 431 F.2d at 22 (holding the burden rests on the moving party "to establish that a balancing of proper interests weighs in favor of the transfer").  Indeed, when the party that *brought* the action in the first place moves to transfer, it bears the *additional* burden of proving "a change in circumstance that has occurred since the filing of the action which warrants a change of venue," *Great W. Mining & Mineral Co. v. ADR Options, Inc.*, 882 F. Supp. 2d 749, 756-57 (D.N.J. 2012), *aff'd*, 533 F. App'x 132 (3d Cir. 2013) (internal quotations omitted), beyond the desire to engage in forum shopping, *Roberts Bros. v. Kurtz Bros.*, 231 F. Supp. 163, 167 (D.N.J. 1964) (denying plaintiff's motion to transfer one year after complaint was filed because section 1404(a) was "not designed to facilitate belated procedural maneuvers suggestive of forum shopping").

As for "the first-filed" venue presumption, it "is not a mandate directing wooden application" or even "a dispositive rule." *Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 502 F. App'x 201, 205 (3d Cir. 2012).  The presumption "may properly be departed from as the equities of a given case require," including "amidst evidence of 'bad faith' or 'forum shopping.'" *Id.*

5

## ARGUMENT

LaFauci cannot carry his heavy burden to justify transfer of this action for two fundamental, independent reasons. ***First***, LaFauci's motion to transfer tries to end-run the FCA's first-to-file rule that bars this action. As a result, transfer would impose additional briefing, time, and expense without any possible benefit. Section 1404 does not authorize such fruitless, costly, and unjust maneuvering. ***Second***, the FCA's statutory bar aside, LaFauci fails to show how transfer to Illinois would be more, rather than less, convenient to the parties and witnesses. The complaint's allegations of fraud primarily concern relationships between Nurse Ambassadors, doctors and patients that allegedly occurred almost entirely outside of Illinois. On balance, then, transfer would impose a greater burden than it would relieve. At a minimum, "the private and public factors [do not] weigh significantly enough in [LaFauci's] favor to warrant the transfer of this case." *Tonkinson v. Byrd*, No. 17-CV-06162 (NLH)(AMD), 2018 WL 1919829, at *8 (D.N.J. Apr. 24, 2018) (denying motion to transfer).

## I.   LaFauci's Attempt To Circumvent The FCA's First-To-File Bar Is Wasteful, Burdensome, And Contrary To The Interests Of Justice.

LaFauci grounds his transfer arguments on the so-called "first-filed" venue presumption, but fails to acknowledge the FCA's statutory dismissal bar with the same name. LaFauci does not even cite the FCA's first-to-file rule, much less acknowledge that it "bar[s] a later-filed action alleging the same elements of a fraud

described in an earlier suit." *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 233 (3d Cir. 1998) (explaining the later-filed case "need not rest on precisely the same facts"; the statutory bar applies so long as the "later allegation states all the essential facts of a previously-filed claim . . . even if that claim incorporates somewhat different details," *id.* at 232-33); *see* 31 U.S.C. § 3730(b)(5).

LaFauci readily admits that his complaint "alleg[es] the same elements of fraud described in an earlier suit," and it plainly does. But contrary to LaFauci's arguments, Congress requires that courts dismiss (not transfer and consolidate) follow-along FCA claims, for reasons central to the effective functioning of the statute's enforcement scheme. *See State Farm Fire & Cas. Co. v. U.S ex rel. Rigsby*, 137 S. Ct. 436, 443 (2016) (holding that § 3730(b)(5) of the FCA "do[es] require, in express terms, the dismissal of a relator's action"). If relators could recover for claims already alleged in a first-filed action, they would dilute each prospective relator's expected recovery, reducing the incentive to file an FCA claim in the first place. *LaCorte*, 149 F.3d at 234. At the same time, dismissing duplicative actions causes no harm to the government's investigative efforts or ability to root out potential fraud because the first-filed action already provides the government with "enough information to discover related frauds." *Id.* Thus, the first-to-file bar is categorical and "exception-free," *United States ex rel. Lujan v. Hughes Aircraft Co.*,

243 F.3d 1181, 1187 (9th Cir. 2001); aside from the government, "*no person . . . may intervene or bring a related action* based on the facts underlying [a] pending [FCA] action." 31 U.S.C. § 3730(b)(5) (emphasis added).

LaFauci's own motion leaves no doubt the FCA's first-to-file rule bars his claims.  Indeed, he spends eight of his brief's ten pages practically arguing as much. He admits, as he must, that "[t]he relevant chronology is indisputable: Suarez filed his Humira kickback claims in the Northern District of Illinois before Relator LaFauci filed his Humira kickback claims in this Court."  (Mot. at 5.)  He insists that his complaint raises *the exact same legal claims* as Suarez's first-filed complaint, as "[b]oth complaints allege that AbbVie's marketing of Humira violates the Anti-Kickback statute and the FCA" by providing kickbacks to healthcare providers.[1] (*Id.*); *see also Suarez* Am. Compl. ¶¶ 140-54; *LaFauci* Am. Compl. ¶¶ 176-89.  And he concedes that "a close examination of the two complaints confirms" that the "overlap" between the essential factual allegations of both complaints "is indisputably substantial."  (Mot. at 5.)  LaFauci has thus argued his own complaint

---

[1] While Suarez subsequently filed an amended complaint on February 12, 2018, after LaFauci's amended complaint of March 11, 2016, these amendments have no impact on the first-to-file analysis, the timing of which is governed by the two relators' initial complaints.  *See, e.g.*, *United States ex rel. Dhillon v. Endo Pharm.*, 617 F. App'x 208, 213 (3d Cir. 2015) (rejecting argument that a later-in-time amendment to a complaint affects first-to-file bar analysis because "the filing of an amended complaint does not begin a new action; it is a continuation of the original action").

out of court: the first-to-file bar applies precisely when "no *substantial* difference [exists] between the claims." *United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 219 (D.C. Cir. 2003); *accord, e.g.*, *LaCorte*, 149 F.3d at 232 (bar applies to later-filed action alleging same "essential facts," *id.*, or "material elements of [the prior] claim," *id.* at 235). It is thus clear that § 3730(b)(5) bars this action.[2]

---

[2] LaFauci may attempt to argue that minor differences between the two complaints—such as LaFauci's naming of Quintiles as a defendant or references to AbbVie's promotion of oral medicines Viekira and Kaletra—are meaningful under the FCA's first-to-file analysis. Such a claim would be unavailing. Courts have squarely rejected the notion that the addition of a new defendant to the later-filed complaint prevents dismissal under § 3730(b)(5). *See, e.g.*, *Hampton*, 318 F.3d at 218 (rejecting argument that "nam[ing] different defendants" forecloses first-to-file bar because "these are not differences in the material elements of the fraud"); *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 517 (6th Cir. 2009) (same); *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1280 n.4 (10th Cir. 2004) (same); *United States ex rel. Edgett v. Kimberly-Clark Corp.*, No. CA 15-CV-0434-B, 2017 WL 4222697, at *4-5 (N.D. Tex. Sept. 22, 2017) ("That [the second complaint] includes more detail than [the first] [and] names an additional defendant . . . does not matter" under first-to-file bar). That is especially true where, as here, the new defendant was alleged to be a co-conspirator in the first-filed complaint. *Suarez* Am. Compl. ¶ 14. LaFauci's Viekira and Kaletra allegations also purport to support the same claim of fraud already alleged by Suarez: that the Ambassador Program functions as a kickback to healthcare providers. And the government plainly had enough information from *Suarez* to discover these alleged additional details for itself. *See United States ex rel. LaPorte v. Premier Educ. Grp., L.P.*, No. CIV. 11-3523 (RBK)(AMD), 2014 WL 5449745, at *8 (D.N.J. Oct. 27, 2014) (holding claims are "related" under § 3730(b)(5) when allegations in first complaint "[are] sufficient to put the government on notice to the alleged false claims" in second complaint). Thus, the first-to-file rule bars LaFauci's complaint in its entirety.

While failing to even recognize the FCA's dismissal rule, LaFauci asks this Court to circumvent § 3730(b)(5) by transferring the case to the Northern District of Illinois for "judicial efficiency." (Mot. at 1.) Fleeing to Illinois only delays the inevitable: the FCA's first-to-file bar still applies. All transfer would accomplish would be to force another court to consider and dismiss this later-filed action there. That is not what the first-to-file rule contemplates.

By the FCA's plain terms, LaFauci cannot "intervene" in Suarez's action. 31 U.S.C. § 3730(b)(5). Nor can the federal court in Illinois consolidate the related actions, as that, too, would violate the first-to-file rule. *See United States ex rel. Simpson v. Bayer Corp.*, No. CA 05-3895 (JLL), 2012 WL 3600302, at *3 (D.N.J. Aug. 21, 2012) (holding that "the consolidation" of related FCA cases "violates the first to file rule" and vacating consolidation of related *qui tam* actions). This is why courts routinely reject motions to consolidate related *qui tam* FCA complaints as a "futile" "attempt to circumvent the FCA's first-to-file bar" as a "merger of cases would [be] an obvious violation of the first-to-file rule." *United States ex rel. Kelly v. Novartis Pharm. Corp.*, 827 F.3d 5, 10-11 (1st Cir. 2016); *see also United States ex rel. Nowak v. Medtronic, Inc.*, 806 F. Supp. 2d 310, 334-35 & n.14 (D. Mass. 2011) (dismissing consolidated complaint on the grounds that it violated the first-to-file rule by allowing the second relator to intervene in the first-filed action). As one court put it, "[t]he FCA does not make an exception to the first-to-file rule for

10

consolidated complaints." *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 305 (4th Cir. 2017).

The required dismissal, not transfer, of this action is clear. This Court has likewise rejected an interpretation of § 3730(b)(5)'s prohibition on "interven[tion]" that might otherwise allow for the addition of subsequent relators through the filing of an amended complaint. *See In re Plavix Mktg., Sales Practices & Prod. Liab. Litig. (No. II)*, 315 F. Supp. 3d 817, 836 (D.N.J. 2018) (holding that first-to-file bar prohibited the filing of an amended complaint naming a partnership's individual members as relators); *accord United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 930 (D.C. Cir. 2017) (citing Seventh Circuit precedent for holding that a § 3730(b)(5) violation requires dismissal, not filing of amended complaint). Upon any transfer, therefore, LaFauci's complaint would not be merged with Suarez's complaint; it would be dismissed altogether. *See United States ex rel. Chovanec v. Apria Healthcare Grp. Inc.*, 606 F.3d 361, 363 (7th Cir. 2010) (adopting same "material facts" standard for § 3730(b)(5) as the Third Circuit in *LaCorte* and affirming dismissal of similar, but not identical, complaint).

Transfer to Illinois for such futile purposes would be a colossal waste of resources. Defendants will file their dismissal motion next week, (Dkt. No. 14 (granting joint application to extend time for Defendants' answer to November 1, 2018)), and will fully brief the first-to-file bar under binding Third Circuit precedent.

Although the first-to-file bar applies equally in Illinois under Seventh Circuit law, there is no reason to require defendants to brief the issue there as well. *See McMasters v. United States*, 260 F.3d 814, 819 (7th Cir. 2001) (applying law of transferee court on federal issues unless Congress "specifically intended [federal law] to be geographically non-uniform"). There is no reason for such delay or repetitive briefing. This Court should deny LaFauci's transfer motion and proceed with consideration of Defendants' first-to-file dismissal arguments.

## II.    LaFauci Has Not Shown That Illinois Is The More Convenient Forum.

Apart from the dispositive first-filed issue, LaFauci does not carry his burden to show how a transfer to Illinois would further "the convenience of parties and witnesses" or the "interest of justice" in this case. 28 U.S.C. § 1404(a).

AbbVie is based in Illinois, but LaFauci's fraud allegations are not. Nearly every potential witness to the purported fraud LaFauci alleges resides and has acted outside of Illinois, with a substantial number of important witnesses and documents in New Jersey. *LaFauci* Am. Compl. ¶ 68 (alleging that AbbVie spent "$1 million in New Jersey alone" on "direct payments to doctors for 'speaker fees' and other types of 'consulting' to promote Humira"). Three of the complaint's four purported "examples of specific false claims" involve alleged payments to doctors who practice in New Jersey. *See id.* ¶ 69 (alleging that Dr. Jerry Bagel was "among the top ten physicians paid by AbbVie," and is "located in East Windsor, New Jersey");

*id.* ¶ 165 (alleging Dr. Jihad Slim practices in Newark, New Jersey); *id.* ¶ 167 (alleging Dr. Nigahus Karabulut practices in Trenton, New Jersey).  And the fourth doctor practices across the river as "a gastroenterologist in Brooklyn, New York." *Id.* ¶ 163.  For obvious reasons, these doctors will be key witnesses should this case proceed to discovery.  Their residences, practices, and sites of alleged payments weigh strongly in favor of the existing New Jersey forum.

Likewise, the complaint focuses on alleged conduct related to the Nurse Ambassador program that overwhelmingly occurred outside of Illinois.  Although LaFauci alleges that one "District Manager of the Ambassador Program" was based "in the Chicago area," *id.* ¶ 108, the complaint describes specific Nurse Ambassadors based in "Westchester and the Bronx, New York," *id.* ¶ 97, Denver, *id.* ¶ 107, Detroit, *id.* ¶ 110, Palo Alto, *id.* ¶ 111, Charlotte, North Carolina, *id.* ¶ 112, northern Colorado, *id.* ¶ 113, Washington, D.C., *id.* ¶ 114, the "Southeastern U.S. region," *id.* ¶ 127, Atlanta, *id.* ¶ 145, and "the Carolinas," *id.* ¶ 146.  Additionally, Jaime, the author of a blog LaFauci quotes extensively, resides in Florida. *Id.* ¶ 80.  These witnesses, too, will be central to LaFauci's claims should this case proceed.  Indeed, their alleged actions and statements make up the bulk of the complaint.  A change in forum will do nothing for the convenience of any of them.

Transfer would not even convenience the moving party.  LaFauci alleges that he "is a licensed New York pharmacist and independent businessman" who resides

in New York. *Id.* ¶ 22. Transfer to Illinois would add nearly 700 miles to his commute to court hearings, contrary to his initial wishes to prosecute this action a stone's throw from New York in Newark, New Jersey. LaFauci now attests that he would prefer to continue his action in Illinois, but the only reason he gives for changing his mind is the fact that he learned of Suarez's first-filed action. (Mot. at 4 n.3.) For the reasons explained above, that is a basis for dismissal, not transfer, and therefore cannot satisfy LaFauci's burden to show "a change in circumstance that has occurred since the filing of the action *which warrants a change of venue*." *Rappoport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481, 501 (D.N.J. 1998) (emphasis added) (denying motion to transfer partly because plaintiff failed to show changed circumstances beyond increased familiarity with the law).

Finally, transfer would substantially inconvenience AbbVie's co-defendant in this case, Quintiles. LaFauci admits Quintiles is headquartered in North Carolina, not Illinois. (Mot. at 9.) Although LaFauci assigns great weight to the location of AbbVie's headquarters, (*id.* at 6-7), he nowhere explains why Quintiles' principal place of business does not deserve at least equal weight *against* transfer. Instead, when it comes to Quintiles, LaFauci entirely fails to "prov[e] that the alternative venue is *not only adequate*, but also *more convenient* than the current one." *Fuller*, 2018 WL 4275992, at *2–3 (emphasis added). Nor can he. Not only is Quintiles not headquartered or incorporated in Illinois, it lacks *any* offices there. (*See* Mot. at

14

9.) By contrast, LaFauci admits that Quintiles *does* have offices in New Jersey. (*Id.*) Moreover, LaFauci's attempt to tie Quintiles to Illinois by virtue of its alleged contract with AbbVie to implement the Nurse Ambassador Program is equally unsuccessful: as described above, the Ambassador Program is alleged to be a nationwide program primarily implemented ***outside*** of Illinois. It therefore does not provide a basis for hailing Quintiles into court there. In short, the complaint is bereft of any allegations suggesting that transfer to Illinois would be a more convenient forum—or even an equally convenient one—for co-defendant Quintiles. It is not. Put simply, LaFauci has not met the heavy burden required to justify transfer here.

## CONCLUSION

For all of these reasons, AbbVie respectfully requests that this Court deny Relator's Motion to Transfer.

15

Dated:  October 22, 2018                    Respectfully submitted,

                                            s/ Justin T. Quinn
                                            _____
                                            Justin T. Quinn, Esq.
                                            ROBINSON MILLER LLC
                                            One Newark Center, 19th Floor
                                            Newark, New Jersey 07102
                                            Telephone: 973-690-5400
                                            Facsimile: 973-466-2761
                                            JQuinn@rwmlegal.com

                                            Andrew A. Kassof, P.C.*
                                            Illinois Bar No. 6271263
                                            andrew.kassof@kirkland.com
                                            Elizabeth S. Hess, P.C.*
                                            Illinois Bar No. 6283085
                                            elizabeth.hess@kirkland.com
                                            Diana M. Watral*
                                            Illinois Bar No. 6304247
                                            diana.watral@kirkland.com
                                            Daniel I. Siegfried*
                                            Illinois Bar No. 6310177
                                            daniel.siegfried@kirkland.com
                                            KIRKLAND & ELLIS LLP
                                            300 North LaSalle
                                            Chicago, Illinois 60654
                                            Telephone: (312) 862-2000
                                            Facsimile: (312) 862-2200

                                            * pro hac vice pending

                                            Counsel for Defendant AbbVie Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day I caused a true and correct copy of the foregoing documents to be served via ECF on all counsel of record.

Dated:       October 22, 2018                    By:    <u>s/ Justin T .Quinn        </u>
                                                         Justin T. Quinn